IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff ) | |
| ) | No. 17-cr-10180-LTS |
| v. ) | |
| ) | |
| JEREMIAH MINES, ) | |
| ) | |
| Defendant. ) | |

### DEFENDANT JEREMIAH MINES' SENTENCING MEMORANDUM

Defendant Jeremiah Mines, a young man with a history of mental health problems and drug addiction who sold small amounts of drugs to support his habit, requests that this Court impose a guideline sentence of one year and one day and a six year term of supervised release. At the time of sentencing, Mr. Mines will have served nearly seven months incarceration, and will be eligible for a halfway house once he is sentenced. Mr. Mines requests that the Court recommend that he be transferred to an inpatient drug treatment facility rather than a halfway house upon his release from incarceration. Mr. Mines, who became addicted to prescription opiates as a result of ongoing pain from a gunshot wound he received when he was eighteen years old, has never received treatment to help him overcome his addiction. He engaged in the charged offenses primarily to support his addiction. He has remained sober during his incarceration and would like the opportunity to overcome his addiction through drug treatment. A sentence of one year and one day and six years supervised release, the lowest sentence the Court can impose in light of applicable statutory minimum, is sufficient but no greater than necessary to effect the goals of 18 U.S.C. § 3553(a).

**ARGUMENT**

The Sentencing Guidelines are advisory, and are but one factor for this Court's consideration in imposing a sentence. United States v. Booker, 543 U.S. 220 (2005). The Supreme Court held in Gall that a district court should begin all sentencing proceedings by calculating the guideline range; and, after arguments by the parties, the "district judge should then consider all of the § 3553(a) factors to determine whether they support a sentence requested by a party" and in so doing, the district judge "may not presume that the Guidelines range is reasonable." United States v. Gall, 552 U.S. 38, 49-50 (2007). Instead, the Court must craft a sentence that is "minimally sufficient to achieve the broad goals of sentencing." United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008). Moreover, sentencing must be individualized and must comport with the principle that "the punishment should fit the offender and not merely the crime." Pepper v. United States, 562 U.S. 476, 487-88 (2011). The specific circumstances of Mr. Mines' situation, when weighing the guidelines calculation as but one factor, warrant Defendants' requested sentence of one year and one day and a six year term of supervised release.

**I.   History and Characteristics of Jeremiah Mines**

Mr. Mines is 26 years old. He managed to graduate from Snowden International School in 2011, but has limited mental capacity and no real skills. As his sister Stephanie Ellis explains, Mr. Mines had a difficult childhood, having been abandoned by his birth father and his birth mother, who suffered herself from mental illness. See Ex. A at 1. Although he was raised in a loving environment by his grandmother and her long-time companion, who Jeremiah considers his father/grandfather, he grew up in a tough community in Roxbury with little structural support. Finances were tight in Mr. Mines' household growing up; the family received social

security and food stamps and lived in subsidized housing.  PSR ¶ 79.  Due to the family's limited means, Jeremiah was often left on his own to fend for himself.  As Mr. Mines' cousin Matthew Williams, who grew up in the same household, tells the Court, Mr. Mines had an especially tough time in his youth because one of his best friends was stabbed, and another was shot to death when they were teenagers.  See Ex. B at 1-2.  As his sister explains, Mr. Mines "could not understand" why one of his best friends was killed and she believed he needed counseling to deal with that experience.  See Ex. A at 2.  Evelyn Mines, who raised Jeremiah, died of cancer in October 2016.  PSR ¶ 80.  Her death was very difficult for Mr. Mines, and, as his cousin and sister report, his mental health problems and addiction worsened after her death.  See Ex. A at 3, Ex. B at 2.

     Unlike many young men in his situation, Jeremiah Mines will have a great deal of family support when his sentence is completed.  His grandfather, long-time girlfriend, cousins and even his child's grandmother are all there to support him.  He also has three sisters and a brother, as well as several nieces and nephews, living in the Boston area.  PSR ¶¶ 78, 85-87.  His friends and family find him to be a "good, honest, and caring person" and that "everyone around him like[s] him."  See Ex. B at 1, C, D.

     Mr. Mines has a nine year old son, and although he had him when he was only 17 years old, he has remained actively involved in his life and plans to continue being an active father.  Albert Owens, Mr. Mines' adoptive grandfather, reports that Jeremiah loves his son and "would do anything" for him.  See Ex. C.  His sister, Stephanie Ellis, confirms that Mr. Mines loves his son "very much."  See Ex. A at 2.  Theisha Allen, Mr. Mines' girlfriend of over two years, attests that Mr. Mines is an involved father who loves his son.  See Ex. E at 1.  Although his son's mother moved to Florida with his son approximately one year ago, Jeremiah sees his son when

3

he visits Boston for vacations, including the Christmas holidays and over the entire summer break and speaks to him on the phone regularly.

Mr. Mines suffers from an addiction to prescription opiates and marijuana. He first used marijuana when he was 15. PSR ¶ 98. His opiate addiction originated during his recovery from a gunshot wound, which his sister describes as a "very scary[,] life changing event." PSR ¶ 99; Ex. A at 2. Mr. Mines was shot in his left leg in 2009 while he was walking down the street.[1] PSR ¶ 92. He had surgery for the injury at Boston Medical Center, for which he was hospitalized for one month. PSR ¶ 92. Mr. Mines still suffers pain as a result of the shooting, and cannot stand for long periods of time. PSR ¶ 92. He was taking approximately 5 Oxycontin and Percocets daily prior to his arrest, and smoking marijuana approximately two times per week. PSR ¶¶ 98-99. Mr. Mines' girlfriend attributes his recent behavior to his addiction, which worsened after the death of Evelyn Mines. See Ex. E at 2-3. Mr. Mines has never been treated for his addiction, with the exception of one voluntary detox program. He believes he does need addiction treatment, and would participate if he is assigned to a drug treatment program.

Mr. Mines has also been hospitalized for a serious mental illness. He was diagnosed with psychotic disorder, not otherwise specified, and paranoia when he was 23 years old, and has been prescribed medication for that condition. PSR ¶ 93. His family took him to the hospital in 2015 because Mr. Mines was hearing voices, and he was hospitalized at Pembroke Hospital for approximately one week. PSR ¶ 93. Mr. Mines has also been treated at Boston Medical Center. PSR ¶ 94. His paranoia explains some of his aggressive behavior as he feels threatened even when objectively he isn't being threatened. He picked fights in jail because he felt safer in the

---

[1] Mr. Mines was also the victim of a 2012 shooting when he was traveling in a vehicle with his girlfriend and a four-year old child. Mr. Mines was not injured in that incident.

administrative segregation unit, even though he had far more restrictions in that unit. His behavior is significantly improved when Mr. Mines is on medication, and he is interested in receiving additional mental health treatment.

Pauline Silva, a family friend who has known Mr. Mines since 2004, attributes Mr. Mines' offense to his addiction to prescription opiates. See Ex. F. His girlfriend, Ms. Allen, strongly supports Mr. Mines' desire to remain sober and to seek treatment for his drug addiction, as well as his need for ongoing mental health treatment and medication after his release. PSR ¶ 89. As she tells the Court, she supports Mr. Mines' efforts to obtain help for his challenges and she describes him as a "good caring person" who "made some bad decision[s]" and believes him to be a "change[d] man" since his incarceration. See Ex. E at 3. She has also asked the Roxbury District Court to dismiss the assault charges brought against Mr. Mines in May 2017, which she says stemmed from Mr. Mines' drug addiction and untreated mental health problems. See Ex. E at 2. His grandfather, Albert Owens, tells the Court that he believes Mr. Mines has learned a "great lesson" as a result of his incarceration. See Ex. C. Matthew Williams, Mr. Mines' cousin, is also very supportive of his need for addiction and mental health treatment. In fact, just prior to Mr. Mines' arrest, his cousin was trying to place him in drug treatment and to have him committed for mental health treatment. See Ex. B at 2.

Although he is limited by his lack of education, his mental illness, and, as his sister explains, his physical limitations due to his leg injury, Mr. Mines has endeavored to work. See Ex. A at 3. Mr. Mines was previously employed at Deputy Delivery Services, where he was responsible for delivering delayed luggage from the airport. PSR ¶ 103. He stopped working in 2012 because the injuries related to his gunshot wound rendered him physically unable to work. PSR ¶ 103. Mr. Mines also worked at TJ Maxx in Cambridge for approximately 8 months. PSR

¶ 103.  Before that, he worked on and off doing odd jobs for Youth Options Unlimited.  PSR ¶ 103.  He is willing to work and would benefit greatly from vocational training.

Mr. Mines is unable to pay any fine or special assessment.  He has no assets and currently has no income.  PSR ¶¶ 106-07.

## II.     Nature of the Offense

Mr. Mines has pled guilty to two counts of Distribution of Cocaine Base within 1000 Feet of a School, in violation of 21 U.S.C. §§ 841(a)(1) and 860.

Mr. Mines was a smalltime drug dealer for the purpose of supporting his own drug habit.  The charges stem from two instances in which Mr. Mines sold a small amount of cocaine base to a cooperating witness.  The government attributes a total of 0.68 grams of cocaine base to Mr. Mines as a result of the charged conduct, and he was paid only $120 for the charged buys.  PSR ¶¶ 20, 26, 31, 36.

In the first incident, on November 13, 2015 Mr. Mines sold 0.61 grams of crack cocaine to a cooperating witness after a telephone call initiated by the informant.  PSR ¶¶ 16-26.  Mr. Mines was paid $80 for the crack cocaine.  The incident charged in count one took place approximately 2-3 blocks from a school.  PSR ¶ 27.  The second incident occurred nearly four months later, on March 8, 2016.  Mr. Mines sold 0.07 grams of crack cocaine to the same informant, who approached him on the street and asked for "coke."  PSR ¶¶ 31-36.  Mr. Mines was paid $40 for the cocaine base on this occasion.  The offense charged in count two took place approximately one block from a school.  PSR ¶ 37.  Mr. Mines profit from these sales was miniscule, allowing him to buy only a couple of days' worth of pills to support his habit.  He never had large amounts of drugs or money, but was just selling small amounts to get by.

Although as the Government points out, Mr. Mines' crimes took place in the Orchard

Park area, that should not be held against him as that is where he and his family lived and where they had lived since he was a child. Jeremiah Mines did not choose Orchard Park. It was a place chosen by his family, given their limited means. As Jeremiah Mines was shot in the area when he was just eighteen years old, he is much more of a product of the neighborhood than a victimizer of it.

**III.     Need for the Sentence Imposed**

A sentence of one year and one day, as it includes a period of incarceration that reflects the seriousness of Mr. Mines' offense. A sentence of a year and a day is within the guidelines range, which presumptive reflects the seriousness of the crime. Mr. Mines was a low-level street dealer engaged in the offense for the purpose of funding his own drug addiction. He was not part of a distribution network and literally sold to anyone who approached him on the street who had cash to pay. He didn't live big but barely got by. As a result, he has undergone forced detox from the drugs he was taking at the time of his arrest, and has lost his freedom and ability to be with his family and friends for a substantial amount of time.

The government's proposed guidelines sentence of 14 months is not unreasonable, but it is greater than necessary to comply with the purposes of sentencing pursuant to 18 U.S.C. § 3553(a). The government's recommendation is in the middle of Mr. Mines' guidelines range. A sentence of 14 months will only add an unproductive two months of incarceration to Mr. Mines' sentence where he will simply be warehoused without the benefit of any rehabilitative programs. It is far more productive to get him help for his addiction and mental health problems so that he can begin to overcome his addiction and develop work skills that will enable him to become a productive member of society.

With respect to the need for deterrence, Mr. Mines has learned the hardships of a loss of

freedom.  Although Mr. Mines has a criminal history, this is his first adult term of imprisonment.  Studies have found that the first term of incarceration is the most effective.  See United States v. Baker, 445 F.3d 987, 992 (7th Cir. 2006) (finding district court determination that prison term will mean more to defendant who has not been previously incarcerated "significant" and "consistent with § 3553's directive that the sentence reflect the need for 'just punishment' and 'adequate deterrence.'") (internal citations omitted).  Mr. Mines has lost nearly seven months of his life with his family and friends, during which time he missed time with his son while he was in Massachusetts over the summer.  He now understands in a real sense the burdens of incarceration.  In addition, his sentence sends a message that drug distribution, even in small amounts, is not tolerated in a protected location.

The proposed sentence also protects the public and provides Mr. Mines with needed medical care.  The defendant will be eligible for a halfway house at the time of sentencing, and requests that he be transferred to a drug treatment program in lieu of a halfway house.  A drug treatment program will allow Mr. Mines to address the underlying addiction that led to the instant offense, and will protect the public from future problems associated with his addiction.

**IV.     Sentencing Guidelines**

Mr. Mines has pled guilty to two counts of Distribution of Cocaine Base within 1000 Feet of a School, in violation of 21 U.S.C. §§ 841(a)(1) and 860.  The parties agree that Mr. Mines is responsible for less than 2.8 grams of cocaine base, and that the charged offenses took place within 1000 feet of a school, a protected location.  The guidelines calculation is as follows:

| | |
|---|---:|
| Base Offense Level, PSR ¶ 47; U.S.S.G. § 2D1.1(a)(5) & (c)(14) | 12 |
| Protected Location Enhancement, PSR ¶ 47; U.S.S.G. § 2D1.2(a)(1) | 2 |
| Acceptance of Responsibility, PSR ¶ 54; U.S.S.G. § 3E1.1(a) | -2 |

| | |
|---|---|
| Total Offense Level, PSR ¶ 55 | 12 |

Mr. Mines' criminal history score is 1, and criminal history category is I.  PSR ¶¶ 62-63. Mr. Mines' guideline range is 10 to 16 months incarceration, six years supervised release, a $5,500 to $4,000,000 fine, and a $200 special assessment.  PSR ¶¶ 109, 114, 117-19; U.S.S.G. Chapter 5, Part A, §§ 5D1.2(c), 5E1.2(c)(3)-(4), 5E1.3; 18 U.S.C. § 3013; 21 U.S.C. § 841(b)(1)(C).

Mr. Mines is also subject to a statutory minimum sentence of incarceration of at least one year.  21 U.S.C. § 860.  PSR ¶ 108.  A minimum six year term of supervised release is also required by 21 U.S.C. §§ 841(b)(1)(C) and 860.  PSR ¶ 113.

The sentence proposed by the defendant is within the guidelines range.  The drug guidelines are less deserving of the Court's deference than most guidelines because, unlike most offense guidelines, they are not tied to empirical evidence.  See, e.g., United States v. Diaz, No. 11-CR-00821, 2013 WL 322243, at *1 (E.D.N.Y. Jan. 28, 2013) (Gleeson, J.) ("[T]he Guidelines ranges for drug trafficking offenses are no based on empirical data, [Sentencing] Commission expertise, or the actual culpability of defendants.  If they were, they would be much less severe, and judges would respect them more.  Instead, they are driven by drug type and quantity, which are poor proxies for culpability."); United States v. Atchley, No. 17-cr—00031, 2017 WL 5613010, at *3 (D. Idaho Nov. 21, 2017) (rejecting § 2D1.1 as it applies to methamphetamine due to lack of empirical basis for guideline).  The Court should decline the government's invitation to require Mr. Mines to serve a sentence in the middle of the guidelines range, which is not based on empirical data and is not an accurate proxy for Mr. Mines' culpability.

**V.    Need to Avoid Unwarranted Sentencing Disparities**

A sentence at the low end of the guidelines range is appropriate to avoid unwarranted

sentencing disparities.  In light of the one year statutory minimum, a sentence of one year and one day is the lowest sentence the Court can impose but is still higher than what would likely have been imposed if there were no mandatory minimum.  That approach is appropriate here to avoid unwarranted disparities because below-guidelines sentences are more common in this district.  In this district in 2016, defendants received a guidelines sentence in only 27.5% of cases.  Ex. G at 11 (U.S.S.C. 2016 Sentencing Report for D. Mass).  During the same year, 71.1% of defendants received a below-guidelines sentence, either with or without the government's agreement.  Id.  Although the Court does not have the option of a below-guidelines sentence in this case, a sentence above one year and one day would punish Mr. Mines more harshly than defendants in this district who sold drugs just a few blocks away.

## CONCLUSION

For the foregoing reasons, Defendant Jeremiah Mines respectfully requests that this Court impose a sentence of one year and one day and a six year term of supervised release.  Mr. Mines also requests that he be transferred to a drug treatment program in lieu of a halfway house.  Court Such a sentence is sufficient but not greater than necessary to effect the goals of 18 U.S.C. § 3553(a) and takes into account all of the relevant sentencing factors and considerations.

        Respectfully submitted,
        JEREMIAH MINES
        By his attorney,

        /s/ Tracy A. Miner_____
        Tracy A. Miner, BBO # 547137
        DEMEO LLP
        200 State Street
        Boston, MA 02109
        Tel:  (617) 263-2600
        Fax:  (617) 263-2300
        Email: tminer@demeollp.com

Dated: January 3, 2018

**CERTIFICATE OF SERVICE**

    I hereby certify that the foregoing document was served by ECF on counsel for the government on January 3, 2018.

                                                /s/ Tracy A. Miner
                                                Tracy A. Miner